IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:10CV814-MHT |
| | ) | |
| RUSSELL COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Marilyn Belton, a tenured teacher in the Russell County public school system, brings this employment discrimination action against her employer, the Russell County Board of Education ("the Board"). She also sues three defendants in their individual capacities: Lillian Baker, Marcia Johnson, and Lalanya Almesha Ramsey – the acting Superintendent, Director of Instruction, and plaintiff's principal, respectively, during most of the time frame at issue. In Count I of the second amended complaint she filed on January 19, 2011, plaintiff asserts a claim of age discrimination in violation of the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq*., which prohibits age discrimination in any program or activity receiving federal financial assistance. (Doc. # 42, ¶¶ 19-25). Count II is a claim pursuant to 42 U.S.C. § 1983 alleging a violation of plaintiff's federal procedural due process rights. (Id., ¶¶ 26-29). In Count III, plaintiff alleges that defendants retaliated against her in violation of her first amendment rights of free speech and association. (Id., ¶¶ 30-35). Count IV is styled "Civil Rights Violations." In this count, plaintiff claims that defendants denied her "rights

guaranteed by the Civil Rights Act of 1964, as amended, 42 USC Sections 1983, 1981, 2000e" (id., ¶ 37); she further asserts that defendants retaliated against her "in violation of federal law's anti-retaliation provisions and 'whistle blower' protection provisions" (id., ¶ 38). The court construes Count IV to assert a Section 1983 claim for race discrimination and retaliation in violation of 42 U.S.C. § 1981 and, also, a claim that defendants discriminated and retaliated against her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964.[1, 2] In Count V, "State Court Torts," plaintiff claims that the defendants are liable to her for violating the Alabama Teacher's Tenure Law, for harassment in violation of unspecified sections of the Alabama Code, for intentional infliction of emotional distress ("Outrage"), and for interference with and breach of the terms of plaintiff's tenured teacher contract.[3]

In mid-November 2011, defendants filed motions for summary judgment, asserting that they are entitled to summary judgment on all of plaintiff's claims. (Docs. ## 70, 72, 73; see also Docs. ## 75, 76 (briefs in support)). On December 2, 2011, plaintiff's counsel filed a motion for extension of time to respond to the motions for summary judgment or,

---

[1] Plaintiff alleges that she was treated differently from a "white male, under 40" comparator. (Doc. # 42, ¶ 39). However, neither Title VII nor Section 1981 prohibit age discrimination. Section 1981 does not prohibit discrimination on the basis of gender.

[2] Plaintiff cites 42 U.S.C. § "2000e." This provision falls within Title VII and includes the definitions applicable to Title VII.

[3] The court has set forth its understanding, reached after diligent effort, of the claims plaintiff is asserting. Despite the efforts of the District Judge to have plaintiff's counsel plead plaintiff's claims more clearly (see Docs. ## 8, 37), plaintiff's second amended complaint remains a good example of the type of shotgun pleading often criticized by the Eleventh Circuit. See e.g., Cook v. Randolph County, Ga., 573 F.3d 1143 (11th Cir. 2009); Peavey v. Black, 2012 WL 986801 (11th Cir. Mar. 23, 2012).

alternatively, a response to the pending motions.  (Doc. # 77). The District Judge granted plaintiff's motion for extension of time, allowing her until December 14, 2011, to respond to the pending motions for summary judgment.  (Doc. # 78).  On December 15, 2011 – the day after plaintiff's responses were due – plaintiff's counsel filed a motion to withdraw, citing plaintiff's failure to "maintain proper contact with [her attorney's] office." (Doc. # 79). The District Judge granted the motion and, the following day, referred this case to the undersigned Magistrate Judge for disposition or recommendation, as appropriate, on all pretrial matters.  (Docs. ## 80, 81).  Because plaintiff was no longer represented, the court allowed plaintiff another extension of time – until January 13, 2012 – to respond; the court also advised the *pro se* plaintiff of the requirements for responding to a motion for summary judgment and the potential consequences of failure to do so properly.  (Doc. # 82). Thereafter, in response to plaintiff's motion to continue (Doc. # 84), and in view of her *pro se* status, the court allowed plaintiff until February 13, 2012, to respond to the pending motions, again advising plaintiff of the requirements for responding to a motion for summary judgment. (Doc. # 87). On February 7, 2012, plaintiff filed a document styled "Sworn Affidavit."  (Doc. # 89).  Plaintiff's affidavit reads, in its entirety, as follows:

> On this 2nd day of FEB, 2012, I am making a statement for the law suit. I, Marilyn Belton, hereby swearing to the information upon giving to the civil court as being true and accurate to the best of my knowledge. I shall provide evidence that will show reasoning for filing the suit.

(Id.). Plaintiff filed no further response to the pending motions for summary judgment. Upon consideration of the allegations of the second amended complaint, the motions for summary

3

judgment,[4] and plaintiff's response, the court concludes that the motions are due to be granted, except as to the plaintiff's Section 1983/1981 and Title VII retaliation claims. However, these claims are due to be dismissed due to plaintiff's failure to comply with the order of the District Judge directing plaintiff to plead her claims in a specified manner.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

---

[4] Except to the extent that they incorporate arguments made by the Board, the individual-capacity defendants' arguments are entirely without merit. Ramsey and Johnson argue that they may not be held liable in their individual capacities because plaintiff's allegations and testimony pertain only to actions they performed in their "official" capacities as supervisor and principal. (See Doc. # 70, pp. 5-8). Baker, acting Superintendent during some of the events alleged, also relies on this faulty legal theory. (See Doc. # 76, p. 2, § I). Baker's attorney's confusion regarding the law is further demonstrated by her assertion that Baker *would* be entitled to state agent discretionary function immunity as to plaintiff's state law claims and to qualified immunity as to plaintiff's federal claims "if she was being sued *in her official capacity*." (Id., § III)(emphasis added). Baker further argues that plaintiff "is barred from proceeding against Baker" because Baker was not named in the EEOC charge as a respondent or as someone who discriminated against the plaintiff and, because she is "sued in her individual capacity[,]" there is "no 'identity of interest' between Baker and the Board." (Id., § II). Plaintiff's failure to name Baker in her EEOC charges has, of course, no bearing on plaintiff's § 1983 claims against Baker. While plaintiff may not pursue Title VII claims against Baker, it is not because she failed to name Baker in her EEOC charges. (See discussion of Count IV, *infra*). Accordingly, the arguments the court discusses in the remainder of this recommendation are those made by the Board.

4

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION[5]

### Age Discrimination Claim

Plaintiff brings her age discrimination claim pursuant to the "*Age Discrimination Act*

---

[5] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

*of 1975, 42 U.S.C. Sections 6101-6107.*"  (Second Amended Complaint, Doc. # 42, pp. 1-2

(italics in original); see also id. at p. 3, ¶ 5 (referencing "Age Discrimination Act"); id. at p.

7, "Count I," ¶ 19 (seeking COMPENSATORY, CONSEQUENTIAL and PUNITIVE

DAMAGES for violation of the *Age Discrimination Act of 1975, 42 U.S.C. Sections 6101-*

*610*[7]")(emphasis in original).[6]   However, plaintiff's factual allegations and the record in

this case demonstrate that plaintiff may not maintain her Age Discrimination Act claim.

> The Age Discrimination Act applies to only federally funded "programs" or
> activities," 42 U.S.C. § 6102; the act does not apply to any "employment
> practice of any employer." 42 U.S.C. § 6103(c)(1). Therefore, because
> [plaintiff] correlates her allegations of age discrimination with her ...
> employment, she has no claim for relief under the Age Discrimination Act.
> See Tyrell v. City of Scranton, 134 F.Supp.2d 373, 381-84 (M.D. Pa.
> 2001)(Caputo, J.)(holding that the Age Discrimination Act does not allow a
> plaintiff to seek relief based on allegations of employment discrimination).
> Further, even if the act could be applied to employment discrimination, the
> statute does not create a private right of action for damages.  See id. at 384
> (holding that "the [Age Discrimination Act cannot support an action for
> damages.").

Penn v. Alabama Dept. of Corrections, 2011 WL 4361636 (M.D. Ala. Sept. 19,

2011)(Thompson, J.).  Plaintiff's claims in this action, like those in Penn, relate entirely to

plaintiff's employment.  Therefore  – as a matter of law –  plaintiff cannot prevail on Count

I, her Age Discrimination Act claim.

### § 1983 Procedural Due Process Claim

---

[6]  Plaintiff does not assert a claim pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* Although plaintiff now proceeds *pro se*, the second amended complaint was filed by plaintiff's attorney eleven months before the attorney was permitted to withdraw from representation. (See Doc. # 42, p. 21; Doc. # 80).

Plaintiff alleges that she "suffered procedural due process violations at the hands of the Defendant(s) when she was not given proper notice pursuant to state law prior to being wrongfully transferred numerous times between 2003 and 2010[.]" (Doc. # 43, Count II, ¶ 26).[7]  Even assuming that plaintiff's interest in teaching the same class at the same grade level and at the same school is a liberty or property interest protected by the due process clause, plaintiff has failed to allege or establish that the State of Alabama has failed to provide adequate post-deprivation remedies. "A procedural due process violation is not complete 'unless and until the State fails to provide due process.'" McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994)(citation omitted), cert. denied, McKinney v. Osceola County Bd. of County Commissioners, 513 U.S. 1110 (1995).  It is undisputed that plaintiff is a tenured teacher.  (See Doc. # 42, ¶ 3; Doc # 75, p. 12).  Plaintiff alleges that she was "not given proper notice" before the transfers at issue. Under the Alabama law in effect at the time of the alleged transfers, a tenured teacher had the right to notice of a proposed transfer and to demand, within fifteen days of receiving such notice, a hearing before the employing board of education to contest the transfer. Ala. Code § 16-24-6 (repealed effective July 1, 2011 by Acts 2011, No. 11-270, "Students First Act of 2011").[8] A tenured teacher who claimed to have been denied her right to a hearing under the statute could appeal directly to "the Chief

---

[7]  In the present motions, defendants have not asserted the statute of limitations – an affirmative defense (see Fed. R. Civ. P. 8(c)) – as a bar to any of plaintiff's claims.

[8]  Even for transfers effected on a "temporary emergency basis," "without regard to the time for filing notice of appeal and hearing," Alabama law provided a right to a hearing upon a teacher's post-transfer appeal to the board. Ala. Code § 16-24B-7 (repealed effective July 1, 2011 by Acts 2011, No. 11-270).

Administrative Law Judge of the Office of Administrative Hearings, Division of Administrative Law Judges, Office of the Attorney General" for relief.  Upon such a direct appeal, the assigned administrative law judge would "(1) order a hearing before the local board, (2) determine that the teacher has been transferred ... in violation of the law and rescind the action taken by the local board, or (3) sustain the action taken by the local board."

See Ala. Code § 16-24-1 (repealed effective July 1, 2011 by Acts 2011, No. 11-270).  If, despite the Board's alleged failure to give plaintiff the required notices of proposed transfers, the Board decided to proceed with the transfer after allowing plaintiff a hearing (either at plaintiff's request or upon order of an administrative law judge), plaintiff had the right to appeal the Board's transfer decision to a hearing officer.  See Ala. Code, § 16-24-7 (repealed effective July 1, 2011 by Acts 2011, No. 11-270).  Upon such appeal, plaintiff had the right to appear at a hearing before the hearing officer.  Id.  The statute stayed the contested transfer while an appeal of the employing board's transfer decision remained pending.  Id.  Plaintiff has not alleged or argued – and cannot establish – that the post-deprivation remedies provided under Alabama law were constitutionally inadequate.  Accordingly, plaintiff cannot prevail – again, as a matter of law – on Count II, plaintiff's § 1983 due process claim, and this claim is due to be dismissed.[9]

---

[9]  The Board asserted its entitlement to immunity as to plaintiff's state law claims pursuant to "Section 14, Ala. Const[.] 1901" and Ex parte Hale County Bd. of Educ., 14 So.3d 844 (Ala. 2009) (see Doc. # 75, p. 2, § II). Although it asserted its entitlement to "sovereign immunity as to some or all of Belton's federal claims" in its answer (Doc. # 67, ¶ 33), in the present motion, the Board has not cited its "sovereign immunity" or the Eleventh Amendment as a basis for summary judgment.  See Docs. ## 72, 75; see also T.P.R. v. Montgomery County Schools, 2009 WL 1098933 (M.D. Ala. Apr. 23, 2009)(concluding, based on the Alabama Supreme Court's decision in Hale, supra, that Montgomery County Board of Education is

**§ 1983 First Amendment Claim**

Plaintiff alleges that the defendants have retaliated against her in violation of her First Amendment rights of free speech and association.  (Doc. # 42, Count III, ¶ 31). Plaintiff alleges:

> The Plaintiff has always spoken out at Board of Education meetings for fellow teachers who have also been discriminated against or treated badly or illegally by the Board of Education and/or high ranking management of the school system, like the named individual Defendant(s) in this matter, therefore she believes they have retaliated against her by wrongfully rating her low on her performance appraisals, not disciplined children who misbehaved in her class sternly enough and, in short, endangered he[r] life by causing extra stress which in turn triggered the cancer making it flare back up again due [to] the Defendant(s)['] purposeful inappropriate actions.

(Doc. # 42, ¶ 12(c)).  Plaintiff further alleges that her transfer "from high school to middle school, and, from teaching English to teaching Math-Study Skills ... appear to be retaliatory in nature, due the claims filed by the Plaintiff with the EEOC against the Defendant(s) or her attendance at Board of Education meetings as a sign of support for other union teachers who were also being mistreated by the Defendant(s)," and that she "was improperly transferred, inappropriately made to change teaching areas from one she was highly qualified in to teach to one she was not State Certified to teach – apparently in retaliation of her support of the Union-AEA and other teachers who had likewise been mistreated by the Defendant(s).  (Id., at ¶¶ 16, 21).

---

entitled to Eleventh Amendment immunity). Accordingly, the court does not address the Eleventh Amendment issue on the present motion.  See McClendon v. Georgia Dept. of Community Health, 261 F.3d 1252, 1257 (11th Cir. 2001)("[U]nlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does.").

The Board contends that plaintiff has not established that she engaged in speech related to a matter of public concern or that the Board was aware of plaintiff's alleged protected activity. (Doc. # 75, pp. 6-7). Plaintiff's EEOC charges all relate to her allegations of discriminatory treatment toward her personally on the basis of her disability, race, sex, and age and, also, of retaliatory action taken against her. (Exhibit 1 to Belton depo.). Plaintiff identifies nothing in the record to suggest that the purpose of her speech was to raise issues of public concern, rather than to seek the EEOC's assistance in resolving plaintiff's personal employment grievances. (See Belton depo., p. 72)(Plaintiff's testimony that she filed three EEOC complaints and "The first one I filed was about the fact that I was trying to transfer to ALC and they wouldn't – nobody would let me transfer out, and that I was teaching math. And the second complaint I filed with EEOC was because they let this white guy transfer in to my building, teaching English. They wouldn't let me transfer out. Again, I went on and filed that complaint because I thought that was discrimination. If he could come in, then I should have been able to go out of the building. And the third one was about all of the letters that I felt like were harassing me about different things."). Plaintiff's speech within the EEOC charges did not relate to a matter deemed by relevant precedent to be of public concern. See Morgan v. Ford, 6 F.3d 750, 752-55 (11th Cir. 1993)(concluding that correctional officer's complaints to superintendent of correctional facility, to the Georgia Department of Corrections Internal Affairs Division, and to the State Office of Fair Employment Practices about sexual harassment by her supervisor, "as serious as they were,

centered around [the plaintiff's] private matters, not matters of social interest" and that, "[a]s an employee grievance, [plaintiff's] speech was not a matter of public concern"); Merriweather v. Alabama Dept. of Public Safety, 17 F. Supp.2d 1260, 1278 (M.D. Ala. 1998), *affirmed without opinion,* 199 F.3d 443 (11th Cir. 1999)(concluding that the plaintiff's own EEOC charges did not constitute speech on a matter of public concern and, therefore, the speech was not entitled to First Amendment protection); Henry v. City of Tallahassee, 149 F.Supp.2d 1324, 1328 (N.D. Fla. 2001)("[T]aking guidance from the Eleventh Circuit's decisions in cases involving similar issues, this court is convinced that when – in the context of a single-plaintiff EEOC charge or court complaint – an employee complains that he was the victim of discrimination and/or retaliation and does so for personal benefit, the main thrust of such speech will rarely, if ever, qualify as speech on a matter of 'public concern.'")(citations omitted).

To the extent plaintiff relies on her "[speaking] out at Board of Education meetings for fellow teachers who have also been discriminated against or treated badly or illegally by the Board of Education and/or high ranking management of the school system" (id., ¶ 12(c)) as the "speech" warranting First Amendment protection, her deposition testimony demonstrates that this "speech" did not occur. (See Belton depo., pp. 155-159 (plaintiff's testimony that, while she thought that she and others were going to try to "get on the Board schedule" to speak about people who were treated badly, "[w]e never did apply to get on the Board schedule for that," "we never did bring it before the board," and, also, that she did not

11

discuss the issue with defendants Ramsey, Johnson, or Baker); see also id., p. 171 (plaintiff's testimony  that, "[W]hen I went to Board meetings, I went there to really just listen. I didn't go there to speak out. I went there to just make sure that I would be able to see what was going on, hear anything that was going on."")).

To  the  extent  that  plaintiff  relies  on  her  non-verbal  conduct  in  attending  Board meetings "as a sign of support for other union teachers who were also being mistreated by the Defendant(s)" (Doc. # 42, ¶ 16) as the "speech" or "association" protected by the First Amendment, plaintiff's deposition testimony reveals that on the single occasion on which plaintiff attempted to attend a Board meeting to "see what was going on with that particular [coworker]" and "just give support," "it took so long for them to have that Board meeting" that plaintiff "didn't even get inside." (Belton depo., pp. 171-72).  Plaintiff testified, "I was at the Board meeting, but I did not get inside to attend the Board meeting[.]" (Id., p. 172). Plaintiff identifies nothing in the record that indicates that any member of the Board was aware that plaintiff had appeared at the location of the Board meeting as a show of support for a particular individual or, even that any Board member or the individual defendants were aware that plaintiff had shown up at all.[10]  Even assuming that plaintiff's attempt to attend

---

[10]  Plaintiff testified that Ramsey wrote to her "about going to the Board meeting." (Belton depo., pp. 171-72).  Plaintiff has not made Ramsey's letter part of the record.  Plaintiff's testimony is too vague to permit a reasonable inference that Ramsey wrote to plaintiff after the meeting or that she was aware of plaintiff's attempt to attend this particular board meeting. Plaintiff's third EEOC charge identifies four allegedly retaliatory letters, but states that they "address[] the issue of how to pass failing students." (Exhibit 1 to Belton depo.)

the Board meeting was protected speech or association,[11] plaintiff has not pointed to any evidence that the defendants were aware of this activity. Without evidence that the defendants knew of the alleged protected activity, plaintiff cannot establish a necessary element of her claim, *i.e.*, a causal relationship as to any alleged retaliatory employment action. See Brillinger v. City of Lake Worth, 317 Fed. Appx. 871, 878 (11th Cir. 2008)("To succeed on a First Amendment retaliation claim, the plaintiff must show that the adverse employment action was causally related to the protected speech.")(unpublished opinion).[12] Accordingly, all defendants are entitled to summary judgment on Count III, plaintiff's First Amendment claim.

### "Civil Rights Violations"

In Count IV, plaintiff brings claims of race-based discrimination (including "hostile environment") and retaliation claims under § 1983 and § 1981 and, also, gender and race claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Plaintiff may not maintain her Title VII claims against the individual-capacity defendants, as Title VII provides relief only against plaintiff's "employer." See Busby v. City of Orlando,

---

[11]  Plaintiff did not testify about whether this particular coworker was a union member, as alleged in paragraph 16 of the second amended complaint. (Belton depo., pp. 171-74).

[12]  In her second amended complaint, plaintiff alleged no facts in support of her "association" claim other than that she attended Board meetings "as a sign of support for other union teachers who were also being mistreated by the Defendant(s)." (Doc. # 42, ¶ 16).  She also made the conclusory allegation that her transfer was "apparently in retaliation of her support of the Union-AEA and other teachers who had likewise been mistreated by the Defendant(s)." (Id., ¶ 21). Plaintiff has not identified any evidence revealing the nature of her "support of the Union-AEA" or suggesting that this allegation relates to anything other than her alleged support for other union teachers.

13

931 F.2d 764, 772 (11th Cir. 1991)("Individual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.")(citations omitted). Accordingly, to the extent that plaintiff asserts Title VII claims in Count IV against the individual-capacity defendants, those claims are due to be dismissed.

The Board argues that plaintiff cannot establish the elements of a hostile environment claim. Plaintiff bears the burden of proving the elements of this claim at trial and, accordingly, must counter the Board's argument that her "allegations and her deposition testimony (doc. no. 70-1) do not state a cause of action for a hostile work environment" (see Doc. # 75, p. 8) with evidence sufficient to demonstrate the existence of a genuine issue of material fact. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(describing two methods for the movant to carry its initial burden on summary judgment and the non-movant's responsive burden). Plaintiff's "Sworn Affidavit" (Doc. # 89), filed in response to the motions for summary judgment, does not demonstrate that she has been subjected to harassment on the basis of her race and/or gender that was sufficiently severe or pervasive to alter the terms and conditions of her employment, nor does it demonstrate a basis for supervisory liability. Plaintiff does not direct the court to other evidence of record that supports her hostile environment claim. Accordingly, all defendants are entitled to summary judgment on plaintiff's § 1983/§1981 racially hostile environment claim and the Board is entitled to summary judgment as to the Title VII race and gender

14

hostile environment claim.[13]

As to plaintiff's failure-to-transfer claim, defendants contend that the plaintiff cannot establish an inference of discrimination because the comparator identified by plaintiff was seeking a transfer *into* the middle school, while plaintiff sought to transfer away from the middle school.  In her complaint, plaintiff alleges that she "was discriminated against by the Defendants when she was not allowed to transfer out of the complained about '*hostile work environment*' in accordance with state law, while a white male, under 40[,] was allowed to transfer lawfully during this same time period." (Doc. # 42, ¶ 39)(italics in original).  The Board argues that, for the comparator's "transfer to be evidence of discrimination against Belton it is necessary that both he and Belton were seeking a transfer to the same position and that the younger, Caucasian male was selected over the older, African American female." (Doc. # 75 at p. 8)(citing Gray v. City of Montgomery, 756 F. Supp. 2d 1339 (M.D. Ala. 2010)(Thompson, J.)).  While the proof described by the Board is one way of raising an inference of discrimination, Gray instructs that it is not the only way.  Gray, 756 F. Supp. 2d at 1346 ("[E]ven if Gray does not strictly satisfy the second and third prima-facie elements, the critical question is whether the city's acts, viewed in the light most favorable to Gray and *if otherwise unexplained*, raise an inference of discrimination.")(emphasis in original).[14]

---

[13]   The court is not required to search the record for evidence that supports plaintiff's claim. However, the court has read plaintiff's deposition testimony and noted no testimony supporting a claim of a hostile environment motivated by either plaintiff's gender or her race.

[14] In Gray, the black plaintiff complained of the defendant's failure to select her over a white person for promotion to a particular position. Gray, 756 F. Supp.2d at 1345-46.

Plaintiff cites no evidence at all in response to the defendants' motions for summary judgment and identifies nothing in the record to establish her claim that the defendant(s) failed to transfer her because of her race and/or gender; thus, she has failed to meet her burden in opposing the motion for summary judgment and defendants are entitled to prevail on this basis alone.

Additionally, the Board points to plaintiff's deposition testimony regarding the identified comparator in support of its motion for summary judgment on plaintiff's discriminatory transfer claims. Plaintiff testified, "I had asked to leave the school, to be transferred out of the system. I wanted to get [out] from under her. I wanted to go anywhere really, but I put on there ALC." (Belton depo., p. 37). She further stated, "When I requested to be transferred out, they transferred a male, a white male in, in 2009. And I'm like – [I] think it was 2009/2008, they transferred a white male in. And I felt like in 2009, why is he going to be transferred in in 2008, and I can't be transferred out." (Id.).[15] In her second EEOC charge, signed under penalty of perjury on August 18, 2007, plaintiff stated, "On February 23, 2007, I applied for a transfer to the alternative school for a position in the English department and I was not granted the transfer. A White male English teacher from the high school requested a transfer to the middle school and was granted the transfer."

---

[15] Plaintiff testified that she believed this to be mistreatment because, when plaintiff had requested a transfer, Ramsey told her that Ramsey could not make the decision about plaintiff's transfer. However, the white male teacher told plaintiff that he was able to transfer to the school "because he had came and talked to [Ramsey], and that's why he was able to come. Now, I don't know. That's what he told me." (Belton depo., p. 38). The court cannot consider the white male teacher's hearsay statement on the present motion(s) for summary judgment.

(Exhibit 1 to Belton depo., Charge No. 420-2007-03825). Plaintiff clarified, later in her deposition, that the transfer about which she complains occurred in August of 2007.[16]  She testified that the white male, John Donahue, had been teaching English at the high school and transferred to teach seventh-grade English. (Belton depo., pp. 153-54). Plaintiff further testified as follows:

> Q.  Now, you said that you were – I think somewhere in here you said that possibly other people were granted transfers when you were not.  Is that true?
>
> A.  Well, I was – yes, I was referring to him.  He is –
>
> Q.  To Mr. Donahue.  Are there any other people who were granted transfers?
>
> A.  As far as in my field, that was the only one in my area.  Because I was really concerned about being in my area.

(Id., pp. 154-55).  In her EEOC charge, plaintiff asserted that she was not being allowed to teach "in [her] field, English."  (Exhibit 1 to Belton depo., August 2007 charge).  However, she stated that she was "assigned to teach seventh and eighth grade reading." (Id.). The record reflects that defendant Baker notified plaintiff in June 2007 of the Board's intent to transfer plaintiff from teaching math study skills at the middle school to teaching "Reading/Language Arts" at the middle school effective August 6, 2007, a transfer that would not affect plaintiff's salary. Plaintiff initially expressed her intent to contest the transfer but, on July 24, 2007, she signed a statement accepting the transfer.  (Exhibit 4 to

---

[16]  While plaintiff's § 1983 claim arising from these transfer decisions in August 2007 was filed beyond the statutory limitations period, defendants did not assert the statute of limitations bar in their motions.

Belton depo.).  The evidence of Donahue's transfer from the high school to the middle school in August 2007 to teach seventh grade English is not sufficient to permit an inference of race or gender discrimination as to the denial of plaintiff's request to be permitted to transfer out of the middle school to the alternative school, particularly in view of plaintiff's transfer from teaching math study skills to teaching reading and language arts.  Thus, all Defendants are entitled to summary judgment on plaintiff's § 1983/§ 1981 failure-to-transfer claim, and the Board is also entitled to summary judgment on plaintiff's Title VII failure-to-transfer claim.

The defendants have made no argument regarding the retaliation claims included within Count IV (see Doc. # 75, Section VII) and, accordingly, they have not met their burden of establishing their entitlement to summary judgment as to plaintiff's § 1983/§ 1981 retaliation claim (all defendants) or plaintiff's Title VII retaliation claim (the Board).

### "State Court Torts"

As the Board argues, it is entitled to sovereign immunity under the Alabama Constitution as to all of plaintiff's state law claims.  Ex parte Hale County Board of Education, 14 So.3d 844, 848-49 (Ala. 2009)("Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit [under § 14, Ala. Const. 1901].").  The individual defendants, by incorporating the Board's arguments, further contend that the evidence does not demonstrate the extreme or outrageous conduct required to establish the tort of outrage or intentional infliction of emotional distress.  See American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980).  Plaintiff has not met her burden on

the present motion of identifying evidence of record permitting an inference of conduct arising to the required level and the defendants are, accordingly, entitled to summary judgment on this claim. (See Second Amended Complaint, ¶ 42(4)).  The defendants further contend that plaintiff's state law claims arising from the teacher tenure statutes are precluded by plaintiff's failure to "utilize the state law remedies available to her or to avail herself of the due process procedures provided to her under Alabama law." (Doc. # 75, pp. 9-10). Plaintiff cites no Alabama law permitting a tenured teacher to bypass the review mechanisms specified in the teacher tenure statutes for contesting transfer decisions and, instead, to proceed directly to an original action seeking a judicial remedy for violation of protections provided by the statute.   The court concludes that Alabama law does not permit such a claim for direct judicial review of a Board's transfer decision.  Cf. Warren v. Birmingham Board of Education, 739 So.2d 1125, 1130 (Ala. Civ. App. 1999)("It is settled law in Alabama that a teacher seeking relief from a school board's action with respect to her contract must exhaust the administrative remedies set out in the Teacher Tenure Act[.]")(citations omitted)(decision rendered under now-repealed teacher tenure statutes but relying on Alabama law requiring exhaustion of administrative remedies generally); see id. (discussing analysis of exhaustion doctrine under Alabama law in Hall v. City of Dothan, 539 So.2d 286 (Ala. Civ. App. 1988)).  Plaintiff does not argue or demonstrate that her state law claims arising from the teacher tenure statutes (see ¶¶ 42(1), (2), and (5) of the Second Amended Complaint) fall within any exception to the administrative exhaustion required by Alabama

law.  Defendants are, accordingly, entitled to summary judgment on these claims.

Finally, defendants argue – without citation to authority – that "Alabama does not recognize an independent civil cause of action for 'harassment.'" (See Doc. # 75, p. 10, ¶ 3; Second Amended Complaint, ¶ 42(3)(alleging "Multiple intentional acts of Harassment – Note Ala. Code"). As to sexual harassment, they are correct that Alabama does not recognize an independent cause of action; instead, such claims "'are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage.'" Ex parte Carlisle, 26 So.3d 1202, 1204 n. 1 (Ala. 2009)(citation omitted). The court concludes that this principle of Alabama law applies also to other claims of "harassment" whether or not such harassment is alleged to be gender-based. Cf. Hendrix v. Chambers, 2008 WL 509633, *4 (M.D. Ala. 2008)(unpublished opinion)("Hendrix brings her final cause of action under state-law harassment.  In Alabama, harassment claims do not present an independent cause of action but must proceed under other common-law tort theories.")(granting summary judgment in case involving allegations of racial and sexual harassment). Thus, defendants are entitled to summary judgment on plaintiff's state law "harassment" claim.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motions for summary judgment (Docs. ## 70, 72, 73) be DENIED as to the § 1983/1981 retaliation claims asserted against all defendants and the Title VII retaliation

claim asserted against the Board in Count IV of the Second Amended Complaint and that the motions be GRANTED as to:

(1) the claims asserted in Counts I, II, III and V;

(2) all Title VII claims, including retaliation, asserted in Count IV against the individual-capacity defendants;

(3) the Title VII race and gender hostile environment and failure-to-transfer claims asserted against the Board in Count IV; and

(4) the § 1983/§1981 racially hostile environment claim and race-based failure-to-transfer claim asserted in Count IV as to all defendants.

Additionally, although the defendants made no specific argument in the motions presently before the court as to the retaliation claims that plaintiff asserts in Count IV of the complaint, the undersigned Magistrate Judge further recommends that these claims – and any other claims the court may have failed to recognize in plaintiff's "shotgun" pleading – be dismissed as to all defendants for plaintiff's failure to comply with the District Judge's specific directives regarding the manner in which plaintiff was to amend her complaint (Doc. # 37, Order entered January 5, 2011).

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before June 6, 2012. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.

21

Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 23rd day of May, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE