IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:10CV814-MHT |
| | ) | |
| RUSSELL COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This action is presently before the court on the motions for summary judgment filed by defendants Johnson and Ramsey on June 16, 2012 (Doc. # 101); by the Russell County Board of Education on June 18, 2012 (Doc. # 102); by defendant Baker on June 18, 2012 (Doc. # 104); and by plaintiff on June 28, 2012 (Doc. # 106).  The undersigned concludes that Baker, the Board, and Johnson are entitled to summary judgment in their favor on the basis of the present motions, but plaintiff and Ramsey are not.

### Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or

absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

Where, as with the Board's and Baker's statute of limitations defense, the moving party will bear the burden of proof at trial,

> that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en banc*)).

2

**Plaintiff's Claims**

Remaining for resolution in this matter are two claims for relief: a 42 U.S.C. § 1983 claim alleging retaliation in violation of § 1981 against all defendants, and a Title VII retaliation claim against plaintiff's employer, the Russell County Board of Education ("the Board"). (See District Judge's Order, Doc. # 98, at p. 6, ¶ 4.). In the introductory paragraph of her second amended complaint (Doc. # 42), plaintiff asserts that "[t]his is primarily a 42 USC § 1983 action to enforce federal procedural due process violations, age discrimination, and *EEOC retaliation case*" and that "[t]his matter comes to reimburse the Plaintiff for being subjected to retaliation *for filing EEOC complaints*." (Id., pp. 1, 2)(emphasis added). Within her statement of facts, plaintiff alleges that "[i]n the past the Plaintiff Belton has filed three (3) complaints with the EEOC regarding the problems she has experienced with the Defendant(s)" and that she "has suffered a variety of adverse actions from the Defendant(s) which she believes to be retaliatory in nature, since most have occurred after the time she file[d] the first EEOC Complaint." (Id., ¶¶ 10-11). She alleges, more specifically, that "the Defendant's illegal transfer(s) of the Plaintiff from high school to middle school, and, from teaching English to teaching Math-Study Skills . . . appear to be retaliatory in nature, due to the claims filed by the Plaintiff with the EEOC against the Defendant(s)[.]" (Id., ¶ 16). Plaintiff asserts these retaliation claims in Count IV ("Civil Rights Violations") pursuant to "the Civil Rights Act of 1964, as amended, 42 USC Sections 1983, 1981, 2000e[,]" contending that "the Defendant(s) have retaliated against her in violation of federal law's

anti-retaliation provisions" and that she has suffered injury "related to attempting to enforce

her federal legal rights." (id., ¶¶ 37, 38, 40).[1] In short, plaintiff alleges that defendants

subjected her to adverse actions – specifically, transferring her from the high school to the

middle school and from teaching English to teaching Math-Study Skills – in retaliation for

filing EEOC charges, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act

of 1964.[2]

_____

[1]  The District Judge determined that "it was unclear that the amended complaint pled [the § 1983/§ 1981 and Title VII  retaliation claims]." (Doc. # 98, p. 3). Thereafter, so that defense counsel could address the remaining claims properly in their motions for summary judgment, this court directed defendants' attention to the particular allegations of plaintiff's second amended complaint that pertain to her § 1981 and Title VII retaliation claims.  (See Doc. # 100 at p. 1 n. 1).

[2]  Plaintiff's second amended complaint was drafted by her attorney, and the court thus is not required to construe it broadly.  The court has considered whether plaintiff's conclusory allegation that defendants subjected her to a "variety of adverse actions . . . which she believes to be retaliatory in nature" (Doc. # 43, ¶ 11) can be fairly read to include acts other than those actually identified in the complaint.  For the following reasons, the court concludes that it cannot.  First, in paragraph 13 of her second amended complaint, plaintiff alleges that she "has suffered *retaliation* and *harassment* along with a number of other state court tort violations, **as set out more fully as follows**, at the hands of the Defendants."  (Doc. # 42, ¶ 13)(italics in original, emphasis in bold type added).  The paragraphs that follow this conclusory allegation identify no actions alleged to have been taken in retaliation for plaintiff's EEOC charges other than the two transfers set forth above.  Paragraph 39 of the complaint – regarding defendants' later refusal to transfer plaintiff – alleges discriminatory treatment in comparison to that afforded to a "white male, under 40," but not as to any comparator who had not filed EEOC charges; thus, it cannot be understood to allege retaliation for filing EEOC charges.  Similarly, paragraph 22, included within Count I (Age Discrimination), asserts that defendants "transferred many ... upon request under the age of 40" while treating plaintiff "who is over 40" poorly. This paragraph alleges only age discrimination, not retaliation for filing EEOC charges.  (See  Doc. # 43, ¶¶ 16-18, 22, 36-40).  Additionally, despite plaintiff's failure to direct the court to competent evidence in support of her claims, the court has reviewed plaintiff's deposition testimony thoroughly.  The court found no testimony of a "variety of adverse actions" sufficient to support colorable claims of retaliation for plaintiff's having filed EEOC charges, even considering the defendants' conduct collectively under a "hostile environment" retaliation theory.  See Gowski v. Peake, 682 F.3d 1299 (11th Cir. 2012)(recognizing a cause of action for "hostile environment" retaliation under Title VII).

4

## Plaintiff's Motion for Summary Judgment

By order entered on June 8, 2012 (Doc. # 100), the court allowed defendants until June 18, 2012, to move for summary judgment on the claims remaining in this action as set forth in the District Judge's order of June 8, 2012 (Doc. # 98), and also established a July 2, 2012, deadline for plaintiff to respond to any such motion. The court's orders permitted defendants Johnson and Ramsey to file a second motion for summary judgment (Doc. # 101), and the other defendants to file their third such motions (Doc. ## 102, 104). However, plaintiff's deadline to move for summary judgment had long since passed, and neither the district judge's order nor the scheduling order entered by the undersigned Magistrate Judge granted plaintiff an additional opportunity to file a summary judgment motion.  (See Doc. # 62, establishing dispositive motion deadline of November 19, 2011; Doc. # 98 (District Judge's order); and Doc. # 100 (briefing schedule)). Nevertheless, on June 28, 2012, plaintiff filed a document styled "Motion for Summary Judgment By Plaintiff Marilyn Belton." (Doc. # 106).  To the extent that plaintiff seeks entry of summary judgment in her favor, the motion is due to be denied as untimely.[3]

---

[3]  Plaintiff has filed no other response to the defendants' pending motions, and it appears that plaintiff may have intended her motion for summary judgment to serve as her opposition to the defendants' motions. Thus, the court will consider the arguments that plaintiff has presented in her motion for summary judgment – to the extent that those arguments are relevant to the claims remaining in this action – in resolving the defendants' motions for summary judgment. Plaintiff persists in the contention she raised at the pretrial conference that she asserts a disability discrimination claim. (Doc. # 106, p. 5). Plaintiff's attorney did make conclusory allegations in her shotgun pleading alleging various actions allegedly based on plaintiff's "illness," her "cancer diagnosis, surgery, and treatment," her " approved FMLA sick leave" and her "disability."  However, plaintiff – through her attorney – ultimately elected to proceed only on the claims identified in the five numbered counts set forth in the second amended complaint. (Doc. # 42).  In its recommendation

**Motion for Summary Judgment by the Board and Baker**

Eleventh Amendment

The Board raises Eleventh Amendment immunity as a bar to plaintiff's § 1983 claim. The Eleventh Amendment bars suits directly against "the State or one of its agencies or departments ... regardless of the nature of the relief sought." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1984). Under Alabama law, the various county boards of education are state agencies for purposes of immunity pursuant to Section 14 of the Alabama Constitution. Ex parte Hale County Board of Education, 14 So.3d 844, 848-49 (Ala. 2009)("County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties... . Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit[.]")(citations and internal quotation marks omitted). However, both the Eleventh Circuit and the Alabama Supreme Court have determined, in cases involving challenged employment actions, that county boards of

---

of May 23, 2012, the court set forth its understanding of the claims plaintiff had raised against the defendants in those five counts (see Doc. # 95, pp. 1-2) and proceeded to recommend disposition of those claims. Plaintiff failed to object to the recommendation in a timely manner. As the District Judge also concluded, plaintiff brings no disability discrimination claim in the second amended complaint. (See Doc. # 98, p. 5). In the present motion/response, plaintiff further attempts to revive other claims that she *did* assert in the second amended complaint, but as to which the court has entered summary judgment in favor of the defendants. The court declines to consider any argument in plaintiff's submission that does not relate to the claims now pending before the court. Additionally, plaintiff's submission (Doc. # 106) is neither an affidavit nor a declaration under penalty of perjury. For the most part, it consists of unsupported factual statements. The court has twice instructed plaintiff regarding the manner in which she must respond to a motion for summary judgment and advised her of the potential consequences of her failure to do so properly. (See Docs. ## 82, 100). The court will not consider any statements of fact within the document that are not supported by citations to competent evidence of record.

education in Alabama are not "arms of the state" entitled to Eleventh Amendment immunity. Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1511 (11th Cir. 1990);  Ex parte Madison County Board of Education, 1 So.3d 980 (Ala. 2008).  Accordingly, the Board is not entitled to Eleventh Amendment immunity as to plaintiff's § 1983 claim.[4]

## Statute of Limitations

The Board and Baker raised the affirmative defense of the statute of limitations in their answers to plaintiff's second amended complaint.  (Doc. # 67, ¶ 34; Doc. # 68, ¶ 34). In their third motions for summary judgment, they contend that the statute of limitations bars plaintiff's § 1983/§ 1981 retaliation claim.  (Doc. # 103, § IV; Doc. # 105, § III).[5] The statute of limitations applicable to a § 1983 claim alleging a violation of § 1981 depends upon whether the claim asserted by the plaintiff was "'made possible by a post-1990 enactment'" of Congress.  See  Baker v. Birmingham Board of Education, 531 F.3d 1336, 1337-38, 1338 n. 2  (11th Cir. 2008)(discussing and quoting Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) and City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 123 n. 5 (2005)). If so, the claim is subject to the four-year statute of limitations in 28 U.S.C.

---

[4] In footnote 9 of its previous recommendation, the court stated that it did not reach the issue of Eleventh Amendment immunity because the board had not raised it, citing T.P.R. v. Montgomery County Schools, 2009 WL 1098933 (M.D. Ala. Apr. 23, 2009), for its conclusion that county boards of education in Alabama are entitled to Eleventh Amendment immunity. Thus, the Board can in no way be faulted for raising this issue in its motion. However, as noted above, the undersigned is now aware, after further research, that controlling authority leads to a different conclusion.

[5] Ramsey and Johnson did not raise this affirmative defense in their answer and do not contend, in their pending motion for summary judgment, that the statute of limitations bars plaintiff's § 1983/§1981 claim. (See Answer, Doc. # 64; Amended Answer, Doc. # 69; and Motion, Doc. # 101, pp. 6-8).

§ 1658(a); if not, the two-year statute of limitations otherwise applicable to § 1983 claims in Alabama applies to the claim.  Baker, 531 F.3d at 1337-38.  The retaliation alleged by the plaintiff occurred during the course of her employment by the Russell County Board of Education – *i.e.*, after the establishment of her employment relationship with the Board.  This type of claim became actionable under 42 U.S.C. § 1981 when Congress amended the statute in November 1991 to define the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b); Pub. L. 102-166, § 101 (Nov. 21, 1991); see CBOCS West, Inc. v. Humphries, 553 U.S. 442, 449-51 (2008)(explaining that Congress amended § 1981 in 1991 to supersede the holding of the Supreme Court in Patterson v. McLean Credit Union, 491 U.S. 164 (1989) that § 1981 did not extend to "'conduct by the employer *after the contract relation has been established*, including breach of the terms of the contract or imposition of discriminatory working conditions'" – the time period in which an employer's retaliation is most likely to occur)(quoting Patterson, 491 U.S. at 177)(emphasis in CBOCS).  Because plaintiff's retaliation claims relate to post-contract-formation conduct of a type that was not actionable before the Civil Rights Act of 1991, they are governed by the four-year statute of limitations established by 28 U.S.C. § 1658(a).

The Board and Baker contend that plaintiff's § 1983/§ 1981 retaliation claims are barred by the statute of limitations.  Plaintiff filed the present action on September 26, 2010. (Doc. # 1).  Thus, any allegedly retaliatory action taken before September 26, 2006, is time-

barred.  The two transfers that plaintiff alleges were "retaliatory in nature, due to the claims filed by the Plaintiff with the EEOC" are: (1) her transfer "from high school to middle school[;]" and (2) her transfer "from teaching English to teaching Math Study Skills." (Second Amended Complaint, ¶ 16).  The Board and Baker point to evidence that the first of these transfers occurred in 2004.  (See Doc. # 52, Exhibit O (authenticating affidavit of Alice Daniel) and Exhibit F (Superintendent's May 26, 2004 letter to plaintiff advising her of the Board's approval of transfer from "Drama Teacher at Russell County High School to English Teacher, Russell County Middle School")).  The Board argues that plaintiff's second transfer also occurred outside the statutory limitations period.  (See Doc. # 52, Exhibit O (Daniel aff.) and Exhibit G (May 1, 2006 letter from principal Larry Screws to Superintendent Becky Lee listing teachers to be "placed in [] different grade assignments but same subject for the 2006-07 school year[,]" including plaintiff's transfer from "8ᵗʰ English" to "8ᵗʰ Studies Skills"); see also Belton depo., p. 15 ("[A]ugust of 2006, that's when Dr. Ramsey came to our school, in August of 2006.  And I was on the eighth grade hallway, and she moved me... . [S]he just moved me from the eighth grade hallway from teaching English, to the seventh grade hallway teaching math. That was in 2006"); Doc. # 52, Exhibit A (plaintiff's March 20, 2007 EEOC charge, signed under penalty of perjury, stating that this transfer was effective by August 2006); Doc. # 106, Plaintiff's "Motion for Summary Judgment" at p. 11 ("August 2006, I reported to work on the eighth grade hall, and was told

I was being transferred to the seventh grade to teach Math.").[6] Thus, plaintiff's § 1983/§ 1981 retaliation claim arising from this transfer is also barred by the applicable statute of limitations.[7]

Plaintiff testified that Baker retaliated against her by failing to take plaintiff's side on the issue of whether plaintiff should be required to teach Math during the 2006/2007 school year and, instead, supporting Superintendent Carter's statements to plaintiff during the February 2007 meeting reiterating that plaintiff "will teach Math." (See Belton depo., pp. 114-15, 122-23, 126-35, 206-09). However, the only allegations in the second amended complaint pertaining to the defendants' refusal to transfer plaintiff (as opposed to their actions in transferring her) do not allege that the refusal to transfer plaintiff was in retaliation

---

[6] Plaintiff testified (and alleges) that she has filed three EEOC charges. Those charges are all properly before this court as Exhibit 1 to plaintiff's deposition. (See Belton depo., pp. 71-80; Exhibits A, B, and C to Doc. # 52; Second Amended Complaint, ¶ 10).

[7] In her Second Amended Complaint – which was drafted by plaintiff's attorney – plaintiff does not identify any transfer other than the 2004 and 2006 transfers as "retaliatory in nature, due to the claims filed by the plaintiff with the EEOC." (See Doc. # 42, ¶ 16). A transfer is a discrete, readily identifiable employment action; plaintiff's conclusory allegations of "numerous acts of consistent retaliation" and her claim that she has "suffered a variety of adverse actions" cannot be understood to include a discrete job transfer not identified specifically by the plaintiff. (See Second Amended Complaint's "Statement of Facts," Doc. # 42, ¶¶ 6-18; see also n. 2, *supra*). Even if the court were to construe plaintiff's complaint to allege that her 2007 transfer was retaliatory in violation of §1981, the claim would fail. Plaintiff's June 11, 2007, transfer to teach seventh and eighth grade "Reading/Language Arts" occurred before August 20, 2007, the date on which plaintiff filed her second EEOC charge. (See Exhibit B to Doc. # 52 (plaintiff reporting the June 2007 transfer within her second EEOC charge) and Exhibits O, J, L and N to Doc. # 52 (transfer correspondence and documentation dated June and July, 2007). Thus, any claim that the June 2007 transfer was in retaliation for filing an EEOC charge necessarily rests on plaintiff's first EEOC charge, filed on March 20, 2007. (See Exhibit A to Doc. # 52). That first charge, however, may not form the basis for plaintiff's § 1981 retaliation claim, as it alleged discrimination on the basis of disability *only*. (Id.).

for her EEOC charges; instead, the refusal to transfer is alleged to be discriminatory on the basis of plaintiff's age and/or race. (See n. 2, *supra*; Doc. # 43, ¶¶ 22, 39). Even if plaintiff had alleged retaliation on the basis of the Board's and/or Baker's refusal – after plaintiff's reassignment to teaching Math – to transfer plaintiff *out* of the Math teaching assignment for the school year that commenced in August 2006,[8] any such refusal cannot serve to bring plaintiff's claim within the statutory limitations period. See Delaware State College v. Ricks, 449 U.S. 250, 261 n. 15 (1980)("Mere requests to reconsider ... cannot extend the limitations periods applicable to the civil rights laws.").[9]

Plaintiff cites no competent evidence of record in opposition to the Board's and

---

[8]  See Belton depo., pp. 32-33, 37, 64-68, 102-04 (plaintiff's testimony describing her repeated requests – "back-to-back" (p. 103) – to transfer out of her Math teaching assignment for the 2006-2007 school year, culminating in a February 2007 meeting with Superintendent Carter, Ramsey and Baker); pp. 65-66, 112 ("What had happened was, I wanted to understand – I wanted to transfer out. And I wanted to understand why I had to keep staying in that math. And that's when she [the superintendent] kept telling me you will teach math. You will teach math.").

[9]  Other than her testimony regarding Baker's involvement with her transfers, plaintiff testified to no conduct by Baker personally, except for an unannounced observation visit by Baker to plaintiff's classroom, right after plaintiff began teaching Math on the seventh grade hallway. (Belton depo., pp. 115-16, 122-26). Plaintiff did not allege this visit as a basis for her retaliation claims. However, despite plaintiff's tentative testimony that this occurred in August 2007 (id., pp. 123-24), the record is clear – from plaintiff's testimony elsewhere in her deposition and her EEOC charge complaining of her transfer to teach Math – that plaintiff "had just got started" teaching Math on the seventh grade wing in August of *2006*, not August of 2007. (Belton depo., p. 16 ("[T]hen in August 2006, that's when Dr. Ramsey came to our school, in August of 2006. And I was on the eighth grade hallway, and she moved me. ... [S]he just moved me from the eighth grade hallway from teaching English, to the seventh grade hallway teaching math. That was in 2006."); id., pp. 16-18 (plaintiff's testimony that she moved from the seventh grade hallway back to the eighth grade hallway in December of 2006); Doc. # 52, Exhibits J, L, N, and O (evidencing plaintiff's transfer to 8th grade reading/language arts effective August 6, 2007)). Thus, the record as a whole does not support a reasonable conclusion that Baker's visit to plaintiff's classroom occurred in August 2007 rather than August 2006. Therefore, this incident, too – even if plaintiff had alleged it in her complaint and that it would otherwise support plaintiff's retaliation claim – would be barred by the statute of limitations.

Baker's evidence that her § 1981 retaliation claim against them is barred by the applicable statute of limitations.[10] Thus, the Board and Baker are entitled to summary judgment in their favor on plaintiff's § 1983/§ 1981 retaliation claim – the sole claim remaining against Baker in this action – on the basis of their affirmative defense that the claim is barred by the statute of limitations.[11]

## Title VII Retaliation Claim Against the Board

Summary judgment previously has been granted on plaintiff's Title VII discrimination claims; remaining for resolution is plaintiff's claim that the Board retaliated against her for filing EEOC charges. "To establish a claim of retaliation under Title VII ... a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). Regarding the two allegedly retaliatory transfers at issue – "the Defendant's illegal transfer(s) of the Plaintiff from high school to middle school, and, from teaching English to teaching Math-Study Skills" (Doc. # 42, ¶ 16)

_____

[10] In her motion for summary judgment, plaintiff points out that she "wrote a transfer request to Ms. Baker, dated Dec. 14, 2006." (Doc. # 106, p. 2). Plaintiff presents no competent evidence of this request and, as discussed above, plaintiff cannot extend the limitations period for her claim based on her August 2006 transfer to teaching math by her later requests to be reassigned out of that position. Plaintiff further states, "The **second and last legal transfer** was August 2007. It occurred when I was transferred to Reading Remediation." (Id.). Even assuming that plaintiff means that this transfer was *illegal*, plaintiff's second amended complaint – as explained previously – does not allege this transfer as a basis for plaintiff's retaliation claim; the court declines to construe plaintiff's conclusory allegations to encompass this job transfer since plaintiff's first EEOC charge cannot support her § 1981 retaliation claim. See n. 7, *supra*.

[11] The court does not, accordingly, reach the remaining arguments Baker presents in Sections IV and V of her summary judgment brief (Doc. # 105) or the Board's "custom or policy" argument (Doc. # 103, pp. 4-6) raised in opposition to plaintiff's § 1983 claim.

– the Board argues that plaintiff cannot establish causation because both transfers occurred before plaintiff filed her first charge with the EEOC. (Doc. # 103, pp. 6-7). The Board is correct. As discussed above, plaintiff's transfer "from high school to middle school" occurred in 2004 and her transfer "from teaching English to teaching Math-Study Skills" occurred, at the latest, in August 2006.[12] Plaintiff filed her first EEOC charge in March 2007. (Exhibit A to Doc. # 52). Thus, plaintiff cannot establish that either transfer was causally related to her EEOC charge. The Board is entitled to summary judgment on plaintiff's Title VII retaliation claim.

### Ramsey's and Johnson's Motion for Summary Judgment

The court granted summary judgment for defendants previously on all claims of race discrimination. (See Doc. # 95 at pp. 14-18, 21; Doc. # 98 at p. 6, ¶ 3). The sole claim remaining against Ramsey and Johnson is a § 1983 claim for race-based retaliation in violation of 42 U.S.C. § 1981.[13] The parties were expressly precluded from incorporating other documents by reference, including the motions and briefs of other parties. (See Doc.

---

[12] The Board also notes that the 2004 transfer was at plaintiff's request. (Doc. # 103, p. 7). Plaintiff agrees that she requested this transfer. Belton's Motion for Summary Judgment, Doc. # 106, p. 2 ("**My first legal transfer**, was requested by me ... for me to return back to RC Middle School, August 2004.")); see also Doc. # 52, Exhibit E (Plaintiff's May 12, 2004 letter to Baker requesting the transfer to middle school); Belton depo., p. 13.

[13] See Doc. # 95, p. 18 (recommendation concluding that defendants are not entitled to summary judgment "as to plaintiff's § 1983/§ 1981 retaliation claim"); Doc. # 98 at p. 6, ¶ 4 (District Judge's order that "The ONLY claims left in this case are the plaintiff's '§ 1983/§ 1981 retaliation claims asserted against all defendants and the Title VII retaliation claim asserted against the Board[.]'"); Doc. # 100 (order identifying remaining claims to include "a 42 U.S.C. § 1983 claim alleging race-based retaliation in violation of 42 U.S.C. § 1981").

# 100, p. 2).[14] Therefore, Ramsey and Johnson are limited, on the present motion, to the issues raised by their own attorney.

To establish a claim of retaliation under § 1981, a plaintiff must establish that she suffered a materially adverse action that was causally related to her statutorily protected activity. Goldsmith, 513 F.3d at 1277. Counsel for Ramsey and Johnson misunderstands the nature of a § 1981 retaliation claim.[15] While he uses the term "retaliation" in his brief, he has treated the claim as one alleging adverse action against the plaintiff *because of her race* –

---

[14] Counsel for Ramsey and Johnson previously succeeded on other claims by adopting arguments raised by the Board. However, the remaining Title VII claim pertains only to the Board, the defenses available to the Board on plaintiff's § 1983 claim differ from those available to the individual defendants, and – while Baker and the Board are entitled to assert the statute of limitations in defense – Ramsey and Johnson waived the affirmative defense by failing to plead it in their answer to the second amended complaint. Thus, so that it would be clear to plaintiff and to the court which issues were asserted by each of the defendants, the court expressly precluded adoption of other parties' arguments by reference on the present motions.

[15] See Tucker v. Talladega City Schools, 171 Fed. Appx. 289 (11th Cir. 2006)("Andrews [v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405(11th Cir. 1998)] does establish that § 1981 encompasses a cause of action for retaliation. This cause of action includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination."); see also Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009)("Absent direct evidence of discrimination, when analyzing claims for race-based retaliation brought under § 1981, we employ the tripartite analytical framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently modified in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)."); Summers v. City of Dothan, Ala., 444 Fed. Appx. 346, 351 (11th Cir. 2011)("A race-based retaliation claim is also cognizable under 42 U.S.C. § 1981.")(citing CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008)); Adams v. Cobb County School Dist., 242 Fed. Appx. 616 (11th Cir. 2007)("The basis of Adams's § 1983 retaliation claim is an alleged violation of § 1981, which itself prohibits an employer from retaliating against its employee as a response to the employee's complaint of race-based discrimination.");Chavis v. Clayton County School Dist., 300 F.3d 1288 (11th Cir. 2002)(explaining that "race-based retaliation" against a witness need not be because of the witness' own race to be actionable under 42 U.S.C. § 1985(2)).

14

*i.e.*, as if the retaliation claim were, instead, a claim of race discrimination.[16]  (See Doc. #

101).  Thus, he contends that Ramsey and Johnson are entitled to summary judgment because

plaintiff cannot establish that Ramsey's or Johnson's actions were motivated by plaintiff's

race.  (Id., pp. 6-8).  Counsel argues:

> These defendants do not have to prove the negative. The burden is on the Plaintiff to submit evidence of every 'essential element of her case with respect to which she has the burden of proof.'
>
> Although these Defendants do not have to prove the negative, all the evidence disproves any racial discrimination by either of them. There was no allegation that Ms. Johnson's leaving the classroom during the testing period to go to the restroom was racially motivated.  Nor did Ms. Belton make any such allegation in regard to the low performance evaluation by Ms. Johnson. ... At no time did Ms. Belton complain that Dr. Ramsey, who is also an African American, acted out of a racial motivation.
>
> In the instant case, the Plaintiff has not complained about race discrimination by these Defendants. A reading of the Second Amended Complaint and the Plaintiff's deposition reveals that all her complaints in regard to these Defendants are based on her disability not on racial discrimination.
>
> As the Supreme Court recognized in *Celotex*, unless the Plaintiff offers admissible evidence of retaliation due to race discrimination, the Plaintiff's claim of such must fail.

---

[16]  See Doc. # 101 (motion of defendants Ramsey and Johnson) at, *e.g.*, p. 2 ("The only possible allegation of racial discrimination by these Defendants ..."), p. 3 (Ramsey is "the only possible target ... of any claim of racial discrimination"), p. 7 ("Although these Defendants do not have to prove the negative, all the evidence disproves any racial discrimination by either of them" and "At no time did Ms. Belton complain that Dr. Ramsey, who is also an African American, acted out of a racial motivation."), and pp. 7-8 ("In the instant case, the Plaintiff has not complained about race discrimination by these Defendants. A reading of the Second Amended Complaint and the Plaintiff's deposition reveals that all her complaints in regard to these Defendants are based on her disability not on racial discrimination."). As noted above (*supra* n. 1), neither the undersigned Magistrate Judge nor the District Judge read the second amended complaint to include a claim of disability discrimination.

(Doc. # 101, pp. 6-8).[17] As noted above, however, plaintiff's § 1981 retaliation claim does not require proof that defendants' actions were motivated by plaintiff's race.

The court specifically apprised the defendants of the particular allegations in the second amended complaint that pertain to the remaining retaliation claims (see Doc. # 100, p. 1 n. 1) so that the defendants might address those allegations in their summary judgment motions. However, counsel for Johnson and Ramsey focused his attention and argument on allegations other than those cited by the court. (See Doc. # 101, pp. 2-3)(quoting ¶¶ 12(b) and 12(c) of the second amended complaint and citing them erroneously as "paragraphs 11b and 11c").[18] Thus, he reasons that – while "it [paragraph 12(c)] appears to be an allegation

---

[17] Defendants also argue – within their statement of undisputed facts – that "Belton did not testify that any conduct or action of either Ramsey or Johnson which she contended was harassment or retaliation was based on race" and that "[t]here is no evidence of any conduct by these Defendants which is race-based retaliation." (Doc. # 101, "Undisputed Facts," ¶¶ 3-4). Despite this, the court cannot fairly read defendants' argument to challenge specifically any element of proof actually required for a § 1981 retaliation claim, as opposed to the racial motivation defendants' counsel erroneously believes is required to sustain such a claim. Additionally, the conclusory statement that "there is no evidence of any conduct by these Defendants which is race-based retaliation" – without supporting argument demonstrating why this is so – is not sufficient to shift the burden on the present motion to the plaintiff to produce evidence as to each element of her claim. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)(discussing the moving party's burden on summary judgment and noting that "[e]ven after Celotex [Corp. v. Catrett, 477 U.S. 317 (1986)], it is never enough simply to state that the non-moving party cannot meet its burden at trial.").

[18] Ramsey and Johnson argue:

As the District Judge noted, it is most certainly "unclear" from the Second Amended Complaint (doc. 42) that the Plaintiff is making a claim of race-based retaliation against these Defendants. The Second Amended Complaint has been searched to find allegations against these Defendants which may be a basis for a claim of "race-based retaliation". The Second Amended Complaint contains a "Count IV Civil Rights Violations." If there were to be such a race-based claim, it surely would be contained in such a Count, but that is not the case as Count IV does not make any allegation of race-based retaliation by these Defendants.

of a First Amendment violation and not a race-based violation" – plaintiff's allegation of low performance appraisals "is the only allegation in the Second Amended Complaint which could be directed against [Johnson]." (Doc. # 101, p. 3). The court agrees that paragraph 12(c) of the second amended complaint is not a part of the retaliation claim remaining before the court – which is why paragraph 12(c) was not among the allegations brought to the defendants' attention in the order establishing the briefing schedule for the present motions. (See Doc. # 100, p. 1 n. 1).[19]

Although he recast the remaining § 1981 retaliation claim as one of race discrimination, counsel did argue on behalf of defendant Johnson – citing supporting evidence of record – that "Belton contended that Johnson's wrongful conduct in regard to her complaint consisted of only two actions[:]" (1) leaving the classroom during testing to go to the restroom, when plaintiff was not permitted to do so; and (2) writing evaluations,

_____

(Doc. # 101, p. 2). However, as quoted in footnote one of the court's previous order (Doc. # 100), plaintiff claimed retaliation expressly within Count IV; she also expressly based Count IV on 42 U.S.C. § 1981. (Doc. # 42, ¶¶ 37-38).

[19] Plaintiff alleged in paragraph 12(c) that the low ratings on performance appraisals were in retaliation for speaking out at Board of Education meetings "for fellow teachers who have also been discriminated against or treated badly or illegally by the Board of Education and/or high ranking management of the school system." (Doc. # 42, ¶ 12(c)). This allegation could conceivably relate to a § 1981 retaliation claim, as well as to plaintiff's First Amendment retaliation claim. However, the court did not include the allegation in its list of those pertaining to the remaining retaliation claims because: (1) plaintiff does not allege the nature of the "discrimination" she protested on behalf of her fellow teachers at the Board meeting and, unless it was related to race, it cannot form the basis for plaintiff's § 1981 claim; (2) the evidence the court considered on plaintiff's First Amendment claim included plaintiff's own testimony that – despite her allegation in paragraph 12(c) to the contrary – she had never "spoken out" at a Board of Education meeting, either to protest discriminatory treatment of fellow teachers or otherwise (see Recommendation, Doc. # 95, at pp. 11-12)(citing Belton depo., pp. 155-59, 171); and (3) plaintiff does not allege that her "low" evaluations or appraisals were in retaliation for any other statutorily protected activity.

while plaintiff was teaching "math studies," that plaintiff believes were too low.  (Doc. #
101, p. 5)(citing Belton depo., pp. 58, 85-86, 107-08).  In addition to the allegedly
unfavorable evaluations – which, as discussed above, do not relate to the remaining claim –
plaintiff testified that Johnson: (1) left the testing room to go to the bathroom during testing
in 2010, when plaintiff was not allowed [by Ramsey] to do so; and (2) failed to stop Ramsey
from badgering plaintiff about continuing to teach math or to voice agreement with plaintiff's
position that she "need[ed] to be in her area of teaching[.]"  (Belton depo., pp. 58-59, 110-
111, 177, 209-11).  Plaintiff testified to no other conduct by Johnson.  Even assuming that
Johnson's action in leaving the testing room to go to the restroom, or her failure to support
plaintiff's requests to be transferred out of the math teaching position, are materially adverse
actions sufficient to support a retaliation claim, plaintiff did not allege this conduct in her
second amended complaint as retaliation for plaintiff's EEOC charges. (See n. 2, *supra*).  Nor
did plaintiff testify in her deposition that Johnson was involved in either of the two retaliatory
transfer decisions at issue, and she has not introduced and/or cited any other evidence on the
present motion suggesting that Johnson bore any responsibility for those decisions. (See Doc.
# 106).[20]  Accordingly, Johnson is entitled to summary judgment on plaintiff's § 1983/§ 1981

---

[20]  Plaintiff contends that "evidence with the events in chronological order was given to The
Honorable Judge Myron H. Thompson & Circuit Court June 24, 2012 at the pre-trial... . It was done
in the presence of all concern[ed] parties." (Doc. # 106, p. 5).  However, in his order of June 8, 2012,
Judge Thompson stated that while plaintiff had "attempted to present to the court a bundle of
documents in opposition to defendants' summary-judgment motions and to the magistrate judge's
recommendation[,]" those documents would not be considered.  (Doc. # 98, p. 4).  The documents
plaintiff "attempted to present" to Judge Thompson are not in the record.  Although she was given
an opportunity to do so (see Doc. # 100), plaintiff did not file any evidence in opposition to the
present motions for summary judgment.

retaliation claim.

The court has considered defendants' motion/brief carefully to determine whether – despite counsel's misunderstanding of the law – he cites any evidence or makes argument that would also entitle defendant Ramsey to summary judgment. However, he does not. The deposition testimony cited in support of Ramsey's motion pertains to conduct by Ramsey that is not alleged in the second amended complaint to have been in retaliation for plaintiff's alleged statutorily protected activity, *i.e.*, her EEOC charges. (<u>See</u> Doc. # 100, p. 1 n. 1 (court's order identifying relevant allegations); Doc. # 101, pp. 2-3 ("the only possible allegation of racial discrimination by these Defendants in the Second Amended Complaint are in paragraphs [12(b) and 12(c)]"); <u>id.</u>, pp. 3-5 (citing, in ¶¶ 1(A) through 1(E), plaintiff's deposition testimony regarding Ramsey's conduct in requiring her to make portfolios on her students, being rude to her in front of other teachers, sending letters about attending PTA meetings, not allowing her to take a restroom break from the testing room, slamming a letter down on plaintiff's desk, asking her why she was wearing a mask while cleaning her classroom, and regarding "Belton's several attempts to transfer from the school and to transfer from teaching math study skills" by requesting transfers from the superintendent); <u>see also</u> n. 2, *supra*).

The only argument Ramsey raises that relates to the particular transfer decisions at issue is as follows:

> Ms. Belton complained about being assigned to teach the Math-Study course. However, it was not Dr. Ramsey who made that assignment. Ms. Belton was assigned that course by Dr. Ramsey's predecessor.

19

(Doc. # 101, p. 7).[21]  Ramsey submitted her own affidavit in support of this argument, in which she states, "The initial decision for Ms. Marilyn Belton to teach Math-Study Skills was made before I began working at Russell County Middle School." (Ramsey aff., ¶ 3).[22]

However, the evidence of record creates a genuine issue of material fact regarding whether Ramsey was responsible for the challenged transfer decision. The decision of Principal Larry Screws to transfer plaintiff from "8th English" to "8th Studies Skills" for the 2006-07 school year is evidenced by his May 1, 2006, letter to Superintendent Becky Lee. (Doc. # 52, Exhibit O (Daniel's authenticating affidavit) and G (May 1, 2006 letter from Principal Larry Screws to Superintendent Becky Lee).  That letter suggests that the school principal has the authority to make what Screws describes as "intra transfers."  (Id.)  Screws also states that listed transfers – including plaintiff's transfer from "8th English" to "8th Studies Skills" – place the identified teachers in "*the same subject*."  (Id.)(emphasis added). Plaintiff testified that, in August 2006, Ramsey "moved [her] from the eighth grade hallway from teaching English, to the seventh grade hallway teaching math."  (Belton depo., p. 15). Counsel for the Board asked plaintiff whether her transfer "in 2006/2007" was when she was

---

[21]  Ramsey further argues that "the Superintendent personally told Ms. Belton that she [Belton] would teach that course." (Doc. # 101, p. 7). Plaintiff testified that the described statement by Superintendent Carter occurred in February 2007, several months *after* plaintiff was transferred to the Math teaching position.  (Belton depo., pp. 31-32, 64-68, 112).  Thus, it related to plaintiff's later request to transfer out of the position, not to her initial reassignment into the position.

[22]  In the remainder of this paragraph, Ramsey provides hearsay testimony regarding the reasons for the transfer decision, relaying what she "was told by Dr. Marcia Johnson and Lillian Baker[.]" (Ramsey aff., ¶ 3). The court declines to consider this double-hearsay testimony (*i.e.*, Ramsey's statement regarding what Johnson and Baker told her were the reasons for Ramsey's predecessor's decision to transfer plaintiff) on the present motion. The remainder of Ramsey's affidavit does not pertain to the transfer decisions at issue in the retaliation claim before the court.  (See id., ¶¶ 4-6).

"transferred from eighth grade English to study skills"; plaintiff responded, "That's when I was transferred from eighth grade English to seventh grade.... I was transferred from eighth grade to the seventh grade for math. That was that transfer." (Id., pp. 148-49).  Plaintiff testified that the course she was assigned to teach did not involve "more than just math" – "[i]t was math." (Id., p. 112).  She stated that she had taught study skills previously and that "math and study skills[] are two different things."  (Id., pp. 112-13).  Plaintiff testified that, although Ramsey assigned her to teach "math," Ramsey "kept calling it study skills."  (Id., pp. 15, 148-49, 199).  Plaintiff further testified as follows:

> I taught study skills before.  And I think for some reason, they kept wanting to say study skills... . I taught study skills before.  There is not a study skills math per se class. There is not.  I know what study skills is, what it entails, and it has to do with teaching students about how to study and how to take tests, and those types of things.  And it does not have anything to do with one particular course.
>
> . . . I just could not believe that she engaged in trying to say that that was study skills and not math. Just like I said, I tape recorded the whole conversation because I knew that it was math.

(Id., pp. 211).  The evidence would permit a reasonable conclusion that – while Ramsey's predecessor assigned plaintiff to teach eighth grade study skills for the 2006/2007 school year – Ramsey subsequently changed plaintiff's assignment to teaching math.  Thus, Ramsey has failed to make any argument or present evidence demonstrating a basis for granting her motion for summary judgment.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge:

(1) that plaintiff's motion for summary judgment (Doc. # 106) be DENIED as untimely;

(2) that defendant Lillian Baker's third motion for summary judgment (Doc. # 104) be GRANTED, and that summary judgment be entered in her favor on plaintiff's § 1983/§ 1981 retaliation claim;

(3) that the Board's third motion for summary judgment (Doc. # 102) be GRANTED and that summary judgment be entered in the Board's favor on plaintiff's § 1983/§ 1981 and Title VII retaliation claims; and

(4) that Johnson's and Ramsey's "Additional Motion for Summary Judgment" (Doc. # 101) be GRANTED as to plaintiff's § 1983/§ 1981 retaliation claim against defendant Johnson, and DENIED as to plaintiff's claim against defendant Ramsey.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before August 15, 2012. Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. See United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009)(citing Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)).

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144,

1149 (11th Cir. 1993);  Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

      DONE, this 1st day of August, 2012.


            /s/ Susan Russ Walker
            SUSAN RUSS WALKER
            CHIEF UNITED STATES MAGISTRATE JUDGE